COMMONWEALTH of Pennsylvania, Appellee

v.

Jose A. COLON, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 13, 2014.
Filed March 7, 2014.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: ALLEN, STABILE, and STRASSBURGER *, JJ.

OPINION BY ALLEN, J.:

Jose A. Colon ("Appellant") appeals from the judgment of sentence imposed after the trial court denied his Pa.

R.Crim.P. 600 motion to dismiss, and convicted him of forgery, unsworn falsification to authorities, identity theft, tampering with records, and tampering with public records.[1] We reverse and vacate the judgment of sentence.

The trial court summarized the pertinent facts and procedural history as follows:

> Pennsylvania State Trooper John Scott testified that in September of 2009 he was part of a unit that investigated alleged fraudulent identities procured through the Pennsylvania Department of Transportation (hereinafter PennDot).
>
> In September of 2009, and based upon information received from PennDot, Trooper Scott was assigned to investigate whether Appellant had procured a fraudulent driver's license. As part of his investigation, Trooper Scott accessed the Pennsylvania Justice Network (hereinafter JNET) to view the PennDot records of Appellant and another individual named Richard Luis. The PennDot records of Appellant showed that he received an identification card on September 18, 2003 at the Arch Street PennDot location. Appellant's record was updated to a driver's license at the Columbus Boulevard PennDot location on April 23, 2005.
>
> The PennDot record for Richard Luis depicted two images, the first one being the driver's license for an individual which was taken at the Arch Street PennDot location on January 31, 2004. The second image was of an individual which was taken at the Olney PennDot location on February 5, 2008. Based upon his observation of the photographs depicted on the licenses, Trooper Scott determined that the second image for

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 4101(a)(1), 4904(a)(1), 4120(a), 4104(a), and 4911(a)(1).

Richard Luis, while having the correct biological information, depicted Appellant and not Mr. Luis.

\* \* \*

Based on Trooper Scott's observation of the two driver's licenses, a criminal complaint was filed against Appellant on October 19, 2009. Due to Appellant's incarceration [at the Houtzdale State Correctional Institution] on other charges, Appellant's preliminary arraignment was not held until July 20, 2011. Thereafter, Appellant requested five continuances between August 4, 2011 and May 4, 2012. On June 21, 2012, Appellant was held for court on the above mentioned charges and his case was transferred to the Philadelphia Court of Common Pleas where his formal arraignment was held on June 22, 2012.

On July 26, 2012, Appellant decided to change attorneys and the Defender Association of Philadelphia was appointed on August 9, 2012 at which point all discovery was passed.

Appellant rejected a Commonwealth offer on August 29, 2012 and the case was listed for trial. The first objection lodged concerning Appellant's speedy trial rights was filed on October 12, 2012 in the form of a motion to dismiss. [The trial court conducted a hearing on October 15, 2012] and [denied the motion that same day]. Appellant was subsequently found guilty of all charges at the conclusion of a waiver trial held on the same day. On November 16, 2012, Appellant was sentenced to 3–6 months of confinement followed by three years of probation on the forgery charge. Appellant was given no further penalty on all the remaining charges. Appellant was granted a surrender date of November 20, 2012.

Appellant filed an appeal of [the trial court's] decision to the Superior Court of Pennsylvania on December 11, 2012. [The trial court] ordered Appellant to file a concise statement of errors complained of on appeal ... pursuant to Pa.R.A.P. 1925(b) on December 17, 2012. On that same day, [the trial court] ordered the notes of testimony for the bench trial held on October 15, 2012 and the sentencing hearing held on November 16, 2012. [The trial court] received the transcription of the bench trial notes on January 31, 2012. The sentencing notes were not received by [the trial court] until February 28, 2012 and not posted on the First Judicial District database until March 18, 2013.

On January 11, 2013, Appellant filed both a motion *nunc pro tunc* for an extension of time as well as a petition to accept Appellant's Statement *nunc pro tunc*, which were both granted by [the trial] court on January 16, 2013. [The trial court filed a Pa.R.A.P. 1925(a) opinion on February 11, 2013 and a supplemental opinion on March 28, 2013].

Trial Court Opinion, 3/28/13, at 1–3 (citations to notes of testimony omitted).

Appellant raises the following issues for our review:

1. Did not the [trial] court err in denying [Appellant's] motion to dismiss pursuant to Pa.R.Crim.P. 600, in that more than 365 days of non-excludable/non-extendable time passed before [Appellant] was brought to trial, and the Commonwealth was not diligent in bringing [Appellant] to trial?

2. Did not the [trial] court err in permitting Trooper Scott to testify to hearsay matters for which there was no hearsay exception?

Appellant's Brief at 4.

Appellant challenges the trial court's denial of his motion to dismiss the charges

against him. Appellant's Brief at 20–24. Specifically, Appellant argues that the Commonwealth violated Pa.R.Crim.P. 600 by failing to bring him to trial within 365 days after the filing of the criminal complaint, and contravened his state and federal due process rights under the Fifth and Sixth Amendments of the United States Constitution, as well as Article I, Section 9 of the Pennsylvania Constitution. *Id.*

Pennsylvania Rule of Criminal Procedure 600 was adopted "to protect defendant's constitutional rights to a speedy trial under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, in response to the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)" in which the Court adopted a four-part balancing test to determine whether a defendant's speedy trial rights had been violated. *Commonwealth v. Bradford*, 616 Pa. 122, 46 A.3d 693, 700–701 (2012) (citations and internal quotations omitted).

In *Barker*, the United States Supreme Court identified the following four factors to be considered in determining whether an unconstitutional speedy trial violation had occurred: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant. *Commonwealth v. Terfinko*, 504 Pa. 385, 474 A.2d 275 (1984) Although finding "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months," the United States Supreme Court held that "the individual states are free to prescribe a reasonable period consistent with constitutional standards." *Bradford*, 46 A.3d at 701, *quoting Barker*, *supra*.

In response to *Barker*, and because of the "inherent vagueness" resulting from the *Barker* balancing test, the Pennsylvania Supreme Court adopted Pa.R.Crim.P. Rule 1100, later renumbered Rule 600, "to establish a definitive period of time for a speedy trial violation." *Bradford*, 46 A.3d at 701 *quoting Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174, 176 (1976) ("the balancing test announced in *Barker* provides only the minimum standards guaranteed by the Sixth and Fourteenth Amendments, and ... such minimum standards are not adequate to provide Pennsylvania criminal defendants the protection guaranteed by the constitution of this Commonwealth").

■■■ "[A] speedy trial analysis [thus] mandates a two-step inquiry: (1) whether the delay violated Pennsylvania Rule of Criminal Procedure 1100 [now Rule 600]; and, *if not*, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. DeBlase*, 542 Pa. 22, 665 A.2d 427, 431 (1995) (emphasis added) *citing Jones v. Commonwealth*, 495 Pa. 490, 499, 434 A.2d 1197, 1201 (1981) (although Rule 600 (formerly Rule 1100) was designed to implement the constitutional rights of an accused to a speedy trial, the constitutional guarantees to a speedy trial continue to provide a separate basis for asserting a claim of undue delay in appropriate cases, and in analyzing such constitutional claims, we apply the four-part *Barker* test); *Commonwealth v. Preston*, 904 A.2d 1, 10 (Pa.Super.2006) (while Rule 600 was designed to implement the speedy trial rights provided by the federal and state constitutions, the constitutional provisions themselves continue to provide a separate and broader basis for asserting a claim of un-

due delay in appropriate cases under the balancing test set forth in *Barker v. Wingo* ).[2]

Pursuant to the two-step analysis enunciated in *DeBlase, supra,* we first consider whether the delay violated Pa.R.Crim.P. 600, and if not, we may proceed to the four-part constitutional analysis set forth in *Barker.*

Rule 600 (formerly Rule 1100) entitled "Prompt Trial" was adopted by our Supreme Court "to prevent unnecessary prosecutorial delay in bringing a defendant to trial." *Commonwealth v. Brock,* 619 Pa. 278, 61 A.3d 1015, 1021 (2013). Rule 600 provides in pertinent part:

(A)

 (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence ***no later than 365 days from the date on which the complaint is filed.***

\* \* \*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

 (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

\* \* \*

 (3) such period of delay at any stage of the proceedings as results from:

 (a) the unavailability of the defendant or the defendant's attorney;

 (b) any continuance granted at the request of the defendant or the defendant's attorney.

(G)

\* \* \*

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. . . . If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600 (emphasis added).[3]

Thus, Rule 600 makes clear that the Commonwealth is required to commence trial within 365 days of filing the complaint against the defendant.[4] The

---

2. Where the appellant does not raise the separate constitutional issue apart from the Rule 600 issue as a basis for the motion to dismiss, there is no need for the *Barker* balancing test to be examined. *Commonwealth v. Kearse,* 890 A.2d 388, 395 (Pa.Super.2005).

3. On October 1, 2012, the Pennsylvania Supreme Court ordered that, effective July 1, 2013, Rule 600 was rescinded and a new Pennsylvania Rule of Criminal Procedure 600 would be adopted effective July 1, 2013. The Rule 600 at issue in this appeal is the former version of the Rule.

4. We recognize that Pa.R.Crim.P. 600(A)(3) provides that trial in a case in which a written complaint is filed against the defendant, when the defendant is ***at liberty on bail,*** shall commence no later than 365 days from the date on which the complaint is filed. (emphasis added). Here, Appellant was incarcerated in a state correctional institution on other charges, at the time the complaint was filed. Longstanding case law has interpreted Rule 600(A)(3) to apply in circumstances where a defendant who is incarcerated on other charges has not been arrested on the new charges forming the basis of the Rule 600

parties in this case do not dispute, and the trial court acknowledges, that Appellant's trial did not commence until 1092 days (almost three years), after the filing of the complaint.

To determine whether dismissal is required under Rule 600, a court must first calculate the "mechanical run date," which is 365 days after the complaint was filed. Rule 600(C) addresses situations where time can be excluded from the computation of the deadline. Pa. R.Crim.P. 600(C). Case law also provides that a court must account for any 'excludable time' and 'excusable delay.' Excludable time is delay that is attributable to the defendant or his counsel. Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence. . . .

[T]he only occasion requiring dismissal is when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay.

*Commonwealth v. Goldman*, 70 A.3d 874, 879–880 (Pa.Super.2013) (citations and internal quotations omitted).

In the present case, the criminal complaint was filed on October 19, 2009.

Thus, the mechanical run date for purposes of Rule 600 was October 19, 2010 (365 days after the criminal complaint was filed). It is undisputed that trial did not commence until October 15, 2012, after 1092 days had passed since the filing of the complaint, and well after the expiration of the 365–day period set forth in Rule 600.

■ With regard to any "excludable delay" attributable to Appellant, the trial court notes that Appellant requested five continuances between August 4, 2011 and May 4, 2012, and that on July 26, 2012, Appellant requested new counsel who was not appointed until August 9, 2012, with trial finally commencing on October 15, 2012. Trial Court Opinion, 3/28/13, at 2. Thus, a delay of 438 days (approximately 14½ months) between August 4, 2011 and October 15, 2012 is potentially attributable to Appellant's requests for continuances and change of counsel. However, these delays attributable to Appellant occurred well after 365 days had already passed since the filing of the complaint, and have no bearing on the Commonwealth's failure to commence trial before the expiration of the mechanical run date of October 19, 2010. Neither the Commonwealth nor the trial court direct this Court to—nor are we able to discern—any other 'excludable' delay attributable to Appellant to account for

claim, and is therefore, technically, at liberty on those new charges. *See, e.g., Commonwealth v. Booze*, 947 A.2d 1287, 1291 (Pa.Super.2008) (holding that where the complaint was filed when the defendant was incarcerated out of state on other charges, Rule 600(A) "makes clear that the mechanical run date comes 365 days after the filing of the complaint" and the due diligence analysis remains viable); *Commonwealth v. McNear*, 852 A.2d 401 (Pa.Super.2004) (performing Rule 600 analysis to determine whether a defendant incarcerated on other charges was entitled to relief on his speedy trial claim). *See also Commonwealth v. Peterson*, 19 A.3d 1131, 1135–1136, n. 4 (Pa.Super.2011) (recognizing

that while the language of Rule 600 ordinarily applies to defendants on bail, both our Supreme Court and the Superior Court have applied Rule 600 to defendants who are not eligible for bail or were otherwise not free on bail at the time that the 365–day period elapsed).

Pa.R.Crim.P. 600 has since been amended to reflect that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed" regardless of whether the defendant is at liberty on bail. Pa.R.Crim.P. 600(A)(2)(a), adopted October 1, 2012, effective July 1, 2013.

the Commonwealth's failure to commence trial before the 365–day period expired.

■■■■ The failure of the Commonwealth to commence trial within 365 days from the filing of the complaint constitutes a technical Rule 600 violation. However, we must determine whether the delay was 'excusable', resulting from circumstances beyond the Commonwealth's control and despite its due diligence. *Goldman, supra.* "If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, the motion to dismiss shall be denied." Pa.R.Crim.P. 600(G). "[T]he Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time," and the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *Commonwealth v. Ramos,* 936 A.2d 1097, 1102 (Pa.Super.2007) (citations omitted); *Bradford,* 46 A.3d at 701. "As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Com. v. Sloan,* 67 A.3d 1249, 1252–1253 (Pa.Super.2013), *quoting Bradford,* 46 A.3d at 701–02. We must therefore determine whether the aforesaid violation occurred because of the Commonwealth's failure to exercise due diligence in bringing Appellant's case to trial, or whether it was the result of factors beyond the Commonwealth's control, despite its exercise of due diligence.

In making its factual findings, the trial court determined that the Commonwealth presented no evidence of any efforts it made to bring Appellant to trial, explaining that the Commonwealth's witness, Trooper Scott, testified only to his efforts to locate Appellant *before* the filing of the complaint—an irrelevant time period for

Rule 600 purposes. Trial Court Opinion, 3/25/13, at 7–8. Additionally, the trial court noted that although the Commonwealth asserted that "Trooper Scott faxed a copy of the complaint" to the state institution in which Appellant was confined, and that "a detainer was lodged against Appellant therefore assuring his release from state custody" no evidence was presented to support this assertion. *Id.* at 7–8. The record does not reflect that any evidence was presented demonstrating that the Commonwealth made any further efforts to bring Appellant to trial while he was imprisoned in the state correctional institution, and the trial court in its Pa. R.A.P. 1925(a) opinion acknowledged that it "[could] not make a specific determination as to whether the Commonwealth exercised due diligence in bringing Appellant to trial." Trial Court Opinion, 3/28/13, at 8.

While due diligence does not require punctilious care, it does require some reasonable effort by the Commonwealth, which has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *Sloan,* 67 A.3d at 1252–1253. Because there is nothing in the record to indicate that the Commonwealth made any efforts after the filing of the complaint to ensure that Appellant was brought to trial within 365 days, despite being aware of Appellant's location at a state correctional institution, we are constrained to find that the Commonwealth failed to exercise the requisite due diligence. Because there is no evidence that the delay was caused by circumstances beyond the Commonwealth's control, Appellant's Rule 600 motion should have been granted. *See Commonwealth v. Pichini,* 308 Pa.Super. 425, 454 A.2d 609 (1982) (the Commonwealth failed to meet its burden of showing that it had exercised due diligence where the defendant was incarcerat-

ed in Pennsylvania when the complaint was filed, and the Commonwealth presented no evidence that it had expended any time or effort in attempting to commence trial within the time allowed where the defendant could readily have been found within the prison system and made available for arraignment and trial); *Commonwealth v. Haynes*, 339 Pa.Super. 165, 488 A.2d 602, 605 (1985) (where the accused was incarcerated but the Commonwealth did not know the whereabouts of the accused, we may find the accused to be 'unavailable' within the meaning of the speedy trial rules; however, where the Commonwealth knew where the accused was incarcerated, we have required a showing of due diligence by the Commonwealth in seeking the custody of the accused); *Commonwealth v. Martin*, 246 Pa.Super. 407, 371 A.2d 903 (1977) (where prosecuting officer had known of defendant's whereabouts from the time that complaint was filed, the fact that defendant was in prison did not render defendant unavailable for trial for purposes of former Rule 1100, and where the record revealed a period of almost total inaction on the part of the Commonwealth that was not caused by factors outside the Commonwealth's control, the Commonwealth's failure to exercise due diligence warranted discharge of the defendant).

 Despite a failure to find that the Commonwealth acted with due diligence, the trial court concluded that Appellant was not entitled to relief on his speedy trial claim on the grounds that "there exists no reason to believe that any violation of Rule 600 occurred because of the deliberate effort of the Commonwealth to deprive Appellant of his right to a speedy trial [and] that the Commonwealth's actions or omission in this case do not amount to actual misconduct." Trial Court Opinion, 3/28/13, at 8. Our Supreme Court has made clear, however, that where, as here, our speedy trial decision turns solely on whether the Commonwealth exercised due diligence, "we need not consider whether there exists misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused." *Bradford*, 46 A.3d at 703.[5] Rather, due diligence is the applicable standard as prescribed in Rule 600(G). *Id.* In light of the absence of any evidence showing that the Commonwealth made reasonable efforts to bring Appellant to trial within 365 days, the Commonwealth's lack of due diligence in this case warrants dismissal of the charges under the express requirements of Rule 600.

 Despite the Commonwealth's failure to exercise due diligence to bring Appellant to trial within 365 days of the filing of the complaint, the trial court nevertheless concluded that relief was not warranted under the four-part constitutional balancing test set forth in *Barker v. Wingo*, *supra*. However, as our Supreme Court recognized, "a violation of Rule 600 may result in dismissal of charges even where a court would not otherwise find a constitutional violation under the *Barker* factors." *Bradford*, 46 A.3d at 701 (the theory behind Rule 600 is that it "eliminates the inherent vagueness encompassed in any

---

5. The question of whether the Commonwealth committed actual misconduct has been considered in cases where the Commonwealth did not commence trial in a timely manner because of judicial delay. *Commonwealth v. Monosky*, 511 Pa. 148, 511 A.2d 1346, 1347–1348 (1986). However, where "our decision ... turns on whether the Commonwealth ex- ercised due diligence rather than a question of the reasonableness of the judicial delay ... we need not consider whether there exists misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, as due diligence rather than misconduct is the relevant criteria." *Bradford*, 46 A.3d at 703.

balancing process and it avoids the necessity of a court determining a violation of this constitutional right on a case-by-case basis"); Pa.R.Crim.P. 600(G) ("If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court *shall* dismiss the charges and discharge the defendant") (emphasis added). In the instant case, a clear and inexcusable Rule 600 violation occurred. We therefore conclude that Appellant was entitled to dismissal of the charges, regardless of the trial court's finding of no constitutional violation under the *Barker* balancing test. Trial Court Opinion, 3/28/13, at 8–13.

■ Moreover, we disagree with the trial court's suggestion that Appellant was not entitled to relief because he did not challenge the delay at the earliest opportunity. Trial Court Opinion, 3/28/13, at 8–10. "A defendant has no duty to object when his trial is scheduled beyond the Rule [600] time period so long as he does not indicate that he approves of or accepts the delay." *Commonwealth v. Brown*, 875 A.2d 1128, 1134 (Pa.Super.2005). Here, nothing in the record indicates that Appellant approved of or accepted the delay. Therefore, his failure to object at the earliest opportunity does not preclude him from obtaining Rule 600 relief.

■ Furthermore, although the trial court determined that Appellant suffered no prejudice as a result of the delay, failure to show prejudice does not preclude Appellant from obtaining relief under Rule 600. Trial Court Opinion, 3/28/12, at 11–12. "When evaluating Rule 600, there need be no discussion of whether a defendant is prejudiced because prejudice is shown simply by proving that the defendant suffered 365 days of non-excludable

pretrial delay under facts showing that the Commonwealth did not exercise due diligence." *Kearse*, 890 A.2d at 395 (explaining that a prejudice analysis is only proper when applying the *Barker* test to evaluate whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution).

Since it is undisputed that a Rule 600 violation occurred as a result of the Commonwealth's failure to exercise due diligence to bring Appellant to trial within 365 days of the filing of the complaint, we conclude that the trial court erred in denying Appellant's Rule 600 motion. Therefore, we reverse the denial of Appellant's motion to dismiss, vacate the judgment of sentence and discharge Appellant.[6]

Order reversed. Judgment of sentence vacated. Appellant discharged. Jurisdiction relinquished.

---

**6.** In his second issue, Appellant asserts that the trial court erred in permitting Trooper Scott to testify to hearsay for which there was no hearsay exception. Because we conclude that the charges against Appellant should have been dismissed for violation of Pa. R.Crim.P. 600, we need not address this second issue.